UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TRG HOLDINGS G & H, LLC, | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 1:21-CV-4694-JPB |
| ASHOKKUMAR R. PATEL, M.D., and MAHENDER PAMPATI, M.D., | |
| Defendants. | |

## ORDER

This matter is before the Court on the Motion to Dismiss Amended

Complaint, Alternative Motion to Transfer and Alternative Motion to Stay [Doc.

25] filed by Ashokkumar R. Patel, M.D., and Mahender Pampati, M.D.,

("Defendants"), and the Motion for Leave to Amend the First Amended Complaint

to Request Punitive Damages in Prayer for Relief [Doc. 38] filed by TRG Holdings

G & H, LLC ("Plaintiff").  This Court finds as follows:

## I.    BACKGROUND

Plaintiff is a limited liability corporation formed for the purpose of

expanding radiology practices in the United States.  Defendants are radiologists

working in Kentucky.  In August 2020, Defendants sold their radiology practice to

Plaintiff.  Contemporaneous to that sale and as relevant here, Plaintiff and

Defendants executed the Employment Agreements (one executed by each defendant) and the Share Purchase Agreement.  The Employment Agreements required Defendants to provide medical services to the radiology practice and governed the terms of their employment, including their compensation.  The Share Purchase Agreement concerned the purchase of Defendants' practice and contained various representations and warranties about the operation and management of the practice.  Although the agreements reference one another, they contain different forum selection clauses.[1]

On July 29, 2021, Defendants filed suit against Plaintiff and others in Kentucky state court, alleging that Plaintiff breached the terms of the Employment Agreements (the "Kentucky Litigation").  See [Doc. 1-2].  In the Kentucky Litigation, Defendants bring claims for unlawful withholding of wages, breach of contract, fraud, securities fraud, misapplication of entrusted property, civil conspiracy, retaliation, punitive damages and injunctive and declaratory relief.

---

[1] Each Employment Agreement provides that the parties "agree[] to submit to exclusive personal jurisdiction and the sole and exclusive venue in the Federal, State or Superior Courts located in Hazard, Kentucky in any action or proceeding arising out of this Agreement" and that they "waive any objections or defenses to jurisdiction or venue in any such proceeding before such court."  [Doc. 25-2, pp. 55, 73].  In contrast, the Share Purchase Agreement states that "[a]ny Legal Proceeding relating to this Agreement or the enforcement of any provision of this Agreement may be brought or otherwise commenced only in any state [or] federal court located in the State of Georgia."  Id. at 104.

[Doc. 25-2].  On August 20, 2021, Plaintiff filed an answer and counterclaim in the Kentucky Litigation alleging that Defendants breached the Employment Agreements.  [Doc. 25-4].  The Kentucky Litigation is ongoing.

On October 25, 2021, Plaintiff filed a complaint in the Superior Court of Fulton County, Georgia, alleging that Defendants breached the terms of the Share Purchase Agreement.  [Doc. 1-1].  Defendants timely removed the case to this Court on the basis of diversity jurisdiction.  [Doc. 1].  Defendants then moved to dismiss or, alternatively, to transfer or stay the case, [Doc. 5], while Plaintiff moved to remand the case to state court, [Doc. 6].  The Court denied the motion to remand on the basis of the Share Purchase Agreement's forum selection clause and ordered Plaintiff to respond to the pending motion to dismiss.  [Doc. 17].  Plaintiff opted to file an amended complaint in response, thus rendering the pending motion moot.  See [Doc 23].  The operative complaint is the Amended Complaint, which brings claims for breach of contract, fraud and attorney's fees.  [Doc. 22].

The Court will briefly review the allegations in the Amended Complaint.[2] According to Plaintiff, the majority of the income generated by Defendants' radiology practice resulted from performing radiology services for Medicare and

---

[2] The Amended Complaint purports to enclose a copy of the Share Purchase Agreement as an exhibit.  See [Doc. 22, p. 2].  The Amended Complaint, however, was filed without any exhibits.

Medicaid patients.  Id. at 3.  Plaintiff asserts that at some point after the parties entered into the Share Purchase Agreement, Defendants' practice was underperforming, which led Plaintiff to look into the practice's operations.  Id. at 4. In late September 2021, Plaintiff allegedly discovered that Defendants were committing Medicare and Medicaid fraud, namely by instructing the practice's secretaries to sign medical reports on Defendants' behalf.  Id.  Plaintiff asserts that Defendants' conduct violates various provisions of the Share Purchase Agreement and that Defendants knowingly induced Plaintiff into executing the Share Purchase Agreement by misrepresenting or omitting material facts about the operation of their radiology practice.  Id. at 5–16.

On September 1, 2022, Defendants moved to dismiss the Amended Complaint or to transfer or stay this case.  [Doc. 25].  Defendants argue that Plaintiff's claims should be dismissed because they should have been brought as compulsory counterclaims in the Kentucky Litigation.  Alternatively, Defendants contend that this Court should dismiss the case under the Colorado River abstention doctrine; transfer the matter to the Eastern District of Kentucky; or stay the case during the pendency of the Kentucky Litigation.

On October 19, 2022, Plaintiff moved for leave to amend the Amended Complaint to request punitive damages.  [Doc. 38].  The Court will address the

Motion for Leave to Amend before discussing Defendants' arguments for dismissing, transferring or staying this case.

## II.     MOTION FOR LEAVE TO AMEND

Rule 15 of the Federal Rules of Civil Procedure provides that "[t]he court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  A trial court should not deny leave to amend under Rule 15 "without any justifying reason."  Foman v. Davis, 371 U.S. 178, 182 (1962).  Justifying reasons to deny leave to amend include "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile."  Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001).  "The decision whether to grant leave to amend is within the sound discretion of the trial court and is not automatic."  Nat'l Serv. Indus., Inc. v. Vafla Corp., 694 F.2d 246, 249 (11th Cir. 1982) (citation omitted).

Plaintiff seeks leave to amend to request punitive damages.  See [Doc. 38, p. 2].  Because the Amended Complaint brings a claim for fraud, Plaintiff argues that punitive damages under O.C.G.A. § 51-12-5.1(b) are appropriate to deter Defendants' conduct.  Id. at 3; see also O.C.G.A. § 51-12-5.1(b) (permitting the award of punitive damages only where the plaintiff establishes by clear and

convincing evidence that the defendants' actions "showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences").  Plaintiff explains only that "[j]ustice requires leave [to amend] in this case because of the threat to the public posed by . . . Defendants' conduct."  [Doc. 38, p. 3]. Defendants oppose any amendment.

The Court finds that leave to amend is not appropriate in this case on the basis of undue delay.  "A district court may find undue delay when the movant knew of facts supporting the new claim long before the movant requested leave to amend, and amendment would further delay the proceedings."  Tampa Bay Water v. HDR Eng'g, Inc., 731 F.3d 1171, 1186 (11th Cir. 2013), abrogated on other grounds by CSX Transp., Inc. v. Gen. Mills, Inc., 846 F.3d 1333 (11th Cir. 2017). Plaintiff brought a claim for fraud in the original complaint that was filed in state court on October 25, 2021.  Because Plaintiff's request for punitive damages is premised on the fraud claim, the facts supporting the amendment have been known to Plaintiff for nearly a year.  See, e.g., Nat'l Serv. Indus., 694 F.2d at 249 (finding no abuse of discretion where the district court denied leave to amend because "the facts supporting the proposed [amendment] were known at the time of the original answer").  Moreover, in the meantime, Plaintiff has already amended its complaint

6

once, yet Plaintiff has not explained why it failed to request punitive damages in its previous amendment. Allowing Plaintiff to amend the complaint yet again would further delay proceedings in a case that is quickly advancing in age. The Motion for Leave to Amend is therefore **DENIED** on the basis of undue delay.

## III.    MOTION TO DISMISS

Defendants argue that the Court should dismiss this action for two alternative reasons: (1) Plaintiff is precluded from bringing its claims in this action because they were compulsory counterclaims that Plaintiff should have brought in the Kentucky Litigation, and (2) this Court must abstain from hearing this case under the <u>Colorado River</u> doctrine. The Court discusses these arguments below.

### 1.    Compulsory Counterclaims

Defendants assert that Plaintiff's claims involve the same subject matter and the same agreements—the Employment Agreements and Share Purchase Agreement—as the Kentucky Litigation. Defendants thus argue that Plaintiff's claims are barred because they are, in reality, compulsory counterclaims that Plaintiff failed to bring in the Kentucky Litigation. Plaintiff, on the other hand, contends that its claims are permissive, rather than compulsory, counterclaims.

Federal Rule of Civil Procedure 13(a) defines a "compulsory counterclaim" as any claim that "arises out of the transaction or occurrence that is the subject

matter of the opposing party's claim."  Rule 13 "was designed to prevent

multiplicity of actions and to achieve resolution in a single lawsuit of all disputes

arising out of common matters."  S. Constr. Co. v. Pickard, 371 U.S. 57, 60 (1962).

In fact, the rule "was particularly directed against one who failed to assert a

counterclaim in one action and then instituted a second action in which that

counterclaim became the basis of the complaint."  Id.  Accordingly, failing to

assert a compulsory counterclaim generally precludes a party from asserting that

claim in a subsequent action.  Cleckner v. Republic Van & Storage Co., 556 F.2d

766, 769 n.3 (5th Cir. 1977).[3]

     "Whether failure to bring a compulsory counterclaim in a prior state court

proceeding bars a diversity action on that claim in a federal district court[] depends

upon state law."  Montgomery Ward Dev. Corp. v. Juster, 932 F.2d 1378, 1380

(11th Cir. 1991); see also Corioliss, Ltd. v. Corioliss USA, Inc., No. 1:08-CV-

2968, 2009 WL 2750972, at *2 (N.D. Ga. Aug. 25, 2009) ("Where the earlier case

is in state court, that state's law determines whether a later claim should have been

asserted as a compulsory counterclaim.").  Because Defendants assert that

---

[3]  In Bonner v. City of Prichard, the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the Fifth Circuit Court of Appeals that were decided prior to close of business on September 30, 1981.  661 F.2d 1206, 1207 (11th Cir. 1981).

Plaintiff's claims should have been raised in the earlier-filed Kentucky Litigation, which commenced and is ongoing in Kentucky state court, the Court applies Kentucky state law to determine whether Plaintiff's counterclaims are compulsory.[4]

Kentucky law "requires a counterclaim to be asserted if it arises out of the transaction or occurrence that is the subject matter or foundation of the opposing party's claim." Commonwealth v. EPI Healthcare, LLC, 362 S.W.3d 337, 340 (Ky. Ct. App. 2011); see also Ky. R. Civ. P. 13.01 (defining "compulsory counterclaim" and using nearly identical language to that of Federal Rule of Civil Procedure 13(a)). Because Kentucky state courts do not appear to have adopted a test for deciding whether a counterclaim is compulsory, federal district courts have used a "logical relation test" to make this determination. Smith v. Discover Bank, No. 6:14-151, 2015 WL 1021423, at *2 (E.D. Ky. Mar. 9, 2015) (applying "the 'logical relation test' applicable to the federal rule" in the absence of a framework used by Kentucky courts); see also Dunn v. Adams, Stepner, Woltermann & Dusing, PLLC, No. 19-4, 2019 WL 6135043, at *9 (E.D. Ky. Nov. 19, 2019) (following the same approach used in Smith). Under the logical relation test, the

---

[4] The Court notes that neither party cited Kentucky law on this issue.

Court considers "whether the issues of law and fact raised by the claims are largely the same and whether substantially the same evidence would support or refute both claims."[5]  Smith, 2015 WL 1021423, at *2 (quoting Sanders v. First Nat'l Bank & Tr. Co., 936 F.2d 273, 277 (6th Cir. 1991)).

Applying the logical relation test shows that Plaintiff's claims in this case were not compulsory counterclaims in the Kentucky Litigation.  Here, Plaintiff alleges that Defendants violated the Share Purchase Agreement by committing Medicare and Medicaid fraud.  See [Doc. 22].  In the Kentucky Litigation, Defendants assert that Plaintiff violated the Employment Agreements by failing to compensate Defendants as provided under those agreements.  See [Doc. 25-2]. Defendants' Kentucky complaint expressly states that their claims "arise by reason of and from acts and omissions arising out of and related to" the Employment Agreements.  Id. at 2.

Defendants argue that the Share Purchase Agreement and the Employment Agreements form "one integrated contract."  [Doc. 25-1, p. 11].  It is true that the

---

[5] The Eleventh Circuit applies a similar "logical relationship test" that was cited by Plaintiff in its response brief.  See Republic Health Corp. v. Lifemark Hosps. of Fla., Inc., 755 F.2d 1453, 1455 (11th Cir. 1985) (defining the "logical relationship test" as asking whether "the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant" (quoting Plant v. Blazier Fin. Servs., 598 F.2d 1357, 1361 (5th Cir. 1979))).

Employment Agreements reference the Share Purchase Agreement.  <u>See</u> [Doc. 25-2, pp. 44, 62].  However, the *claims* in this case and in the Kentucky Litigation are distinct.  They raise different issues of law and fact, involve different sections of different agreements, rest on different conduct and require different evidence.  For instance, the evidence needed to support or refute Plaintiff's claims concerning Medicare and Medicaid fraud is different—or, at the very least, not substantially the same—as the evidence needed to support or refute Defendants' claims about their compensation.  Under the logical relation test, Plaintiff's claims in this case were not compulsory counterclaims in the Kentucky Litigation.  Consequently, insofar as Defendants argue that Plaintiff's claims are subject to dismissal as compulsory counterclaims that Plaintiff failed to bring in the Kentucky Litigation, the Motion to Dismiss is **DENIED**.

### 2.    <u>Colorado River</u> Abstention

Defendants alternatively argue that this Court should dismiss Plaintiff's claims under the <u>Colorado River</u> abstention doctrine.  Plaintiff responds that the exceptional circumstances necessary for abstention are absent from this case.

As a general rule, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the [f]ederal court having jurisdiction." <u>Colo. River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 817 (1976)

(quoting McClellan v. Carland, 217 U.S. 268, 282 (1910)).  The Colorado River

doctrine is an exception to this general rule and "authorizes a federal 'district court

to dismiss or stay an action when there is an ongoing parallel action in state

court.'"  Moorer v. Demopolis Waterworks & Sewer Bd., 374 F.3d 994, 997 (11th

Cir. 2004) (quoting LaDuke v. Burlington N. R.R. Co., 879 F.2d 1556, 1558 (7th

Cir. 1989)).  Because "federal courts have a virtually unflagging obligation to

exercise their jurisdiction, . . . abstention 'is an extraordinary and narrow exception

to the duty of a [d]istrict [c]ourt to adjudicate a controversy properly before it.'"

Jackson-Platts v. Gen. Elec. Cap. Corp., 727 F.3d 1127, 1140 (11th Cir. 2013)

(quoting Colo. River, 424 U.S. at 813)).

        The threshold requirement for Colorado River abstention is the existence of

parallel state and federal proceedings, meaning that the suits involve "substantially

the same parties and substantially the same issues."  Ambrosia Coal & Constr. Co.

v. Pages Morales, 368 F.3d 1320, 1330 (11th Cir. 2004).  If a district court finds

that this threshold requirement is met, abstention is warranted only in exceptional

circumstances.  Jackson-Platts, 727 F.3d at 1141.  When determining whether such

circumstances exist, federal courts must consider the following factors:

> (1) the order in which the courts assumed jurisdiction over
> property; (2) the relative inconvenience of the fora; (3) the
> order in which jurisdiction was obtained and the relative
> progress of the two actions; (4) the desire to avoid piecemeal

litigation; (5) whether federal law provides the rule of decision; and (6) whether the state court will adequately protect the rights of all parties.

Moorer, 374 F.3d at 997 (quoting TranSouth Fin. Corp. v. Bell, 149 F.3d 1292, 1294–95 (11th Cir. 1998)).  No one factor is dispositive, and courts must "weigh the factors with a heavy bias favoring the federal courts' obligation to exercise the jurisdiction that Congress has given them."  Jackson-Platts, 727 F.3d at 1141.  Ultimately, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule."  Colo. River, 424 U.S. at 813.

### A.   Parallel State and Federal Proceedings

The first question for the Court is whether there are parallel state and federal proceedings.  In other words, do the Kentucky Litigation and this action involve "substantially the same parties and substantially the same issues"?  Ambrosia Coal, 368 F.3d at 1330.  "If the federal and state proceedings cannot pass this test, the Colorado River doctrine cannot apply."  Gold-Fogel v. Fogel, 16 F.4th 790, 801 (11th Cir. 2021).  While this inquiry does not require the two cases to "share identical parties, issues, and requests for relief," Ambrosia Coal, 368 F.3d at 1329, the Court should not abstain where "there is any substantial doubt about whether two cases are parallel," Acosta v. James A. Gustino, P.A., 478 F. App'x 620, 622 (11th Cir. 2012).

The plaintiffs in the Kentucky Litigation are the defendants in this case (Ashokkumar R. Patel, M.D. and Mahender Pampati, M.D.).  See [Doc. 25-2, p. 2].  The Kentucky Litigation defendants include the plaintiff in this action (TRG Holdings G&H, LLC), as well as other individuals and entities (Hazard Radiology Associates, Inc.; Anand Lalaji, M.D.; The Radiology Group, LLC; and William Crenshaw).  Id.  Because the parties need not be identical, the Kentucky Litigation and this action involve substantially the same parties.

The proceedings do not, however, involve substantially the same issues. Defendants contend that the claims in both cases "center on the Share Purchase Agreement and the Employment Agreements."  [Doc. 25-1, p. 13].  Defendants frame the issues in this case and in the Kentucky Litigation far too broadly.  As the Court discussed above, see supra Section III.1, this matter and the Kentucky Litigation raise different issues of law and fact.  Specifically, the claims here—for fraud and breach of contract—focus on purported breaches of the Share Purchase Agreement arising from Medicare and Medicaid fraud.  The Kentucky Litigation concerns alleged breaches of the Employment Agreements pertaining to the terms of Defendants' compensation.  There, Defendants bring a variety of claims— including for breach of contract and fraud—but also for unlawful withholding of wages, securities fraud, misapplication of entrusted property, civil conspiracy and

retaliation.  Because these proceedings raise different claims premised on different facts, they do not involve substantially the same issues.  See Jackson-Platts, 727 F.3d at 1140–41 (describing proceedings as "not sufficiently parallel" where "the claims raise distinct legal and factual issues").  The Court therefore finds that the Kentucky Litigation and this suit are not substantially similar and thus that abstention is not warranted.

Even if the Kentucky Litigation and this case were substantially similar, the Court would still decline to abstain because the factors that this Court must consider at the second step of the Colorado River analysis weigh clearly against abstention.  The Court discusses this conclusion below.

### B.    Exceptional Circumstances

Assuming *arguendo* that the Kentucky Litigation is parallel to this action, the Court must assess the propriety of abstention by weighing a series of factors. This determination "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction."  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16 (1983).  "The most important requirement underlying a district court's analysis of whether there exist exceptional circumstances sufficient to warrant dismissal is that the circumstances

be *exceptional*." Noonan S., Inc. v. Volusia County, 841 F.2d 380, 382 (11th Cir. 1988).  As the following analysis shows, exceptional circumstances to justify abstention are absent from this case.

### i.        Assumption of Jurisdiction

"The first Colorado River factor asks if one court assumed jurisdiction over property before the other court." Jackson-Platts, 727 F.3d at 1141.  Importantly, "this factor applies only where there is a proceeding in rem.  Put differently, where 'there is no *real* property at issue,' this factor does not favor abstention." Id. (citation omitted) (quoting Maharaj v. Sec'y for the Dep't of Corr., 432 F.3d 1292, 1306 (11th Cir. 2005)).  This matter is not an in rem proceeding, and no real property is at issue.  Consequently, the first factor weighs against abstention.

### ii.        Relative Inconvenience

"The second factor concerns the inconvenience of the federal forum and focuses 'primarily on the physical proximity of the federal forum to the evidence and witnesses.'" Id. (quoting Ambrosia Coal, 368 F.3d at 1332).  Defendants are Kentucky residents; Plaintiff, a limited liability corporation, is a Georgia citizen.[6] See [Doc. 1].  The conduct at issue in this case occurred in Kentucky.  However,

---

[6] Plaintiff's physical address is in Atlanta, Georgia, and its sole member is a resident and citizen of Georgia.  See [Doc. 1-1, p. 3].

the parties entered into a contract—the Share Purchase Agreement—with a forum selection clause.  "When parties agree to a [forum selection] clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation."[7] <u>Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.</u>, 571 U.S. 49, 64 (2013). Given this Court's obligation to exercise its jurisdiction and the parties' decision to enter a contract with a forum selection clause, the Court finds that the second factor weighs against abstention.

### iii.        Order of Jurisdiction and Relative Progress

The third factor asks "which forum acquired jurisdiction first.  What matters is not so much the 'chronological order in which the parties initiated the concurrent proceedings, but the progress of the proceedings and whether the party availing itself of the federal forum should have acted earlier.'" <u>Jackson-Platts</u>, 727 F.3d at 1142 (quoting <u>TranSouth Fin.</u>, 149 F.3d at 1295).  As to this factor, Defendants assert that the Kentucky Litigation "was commenced months earlier" and that "litigation has been ongoing."  [Doc. 25-1, p. 14].  While the Kentucky Litigation

---

[7] The United States Supreme Court made this observation when discussing a motion to transfer under 28 U.S.C. § 1404(a).  Despite the different context, this Court finds the principle to be nonetheless informative for this component of the <u>Colorado River</u> analysis.

preceded this action—it commenced on July 29, 2021—this case followed shortly

thereafter on October 25, 2021.  Despite the short time between the

commencement of these proceedings, it is well established that this factor "does

not turn on which complaint was filed first."  Noonan S., 841 F.2d at 382.  Instead,

what matters is the relative progress of the two actions.  Here, the Kentucky

Litigation has progressed farther than this case; according to Defendants, that court

has issued an injunction, found Plaintiff in contempt and entered a declaratory

judgment in Defendants' favor.  See [Doc. 25-1, p. 5].  This case has not moved

beyond the motion-to-dismiss stage.  Accordingly, this factor weighs slightly in

favor of abstention.[8]

### iv.        Desire to Avoid Piecemeal Litigation

"The fourth Colorado River factor monitors the potential for piecemeal

litigation."  Jackson-Platts, 727 F.3d at 1142.  This factor supports abstention only

if "the circumstances enveloping th[e] cases will likely lead to piecemeal litigation

that is abnormally excessive or deleterious."  Ambrosia Coal, 368 F.3d at 1333.

The circumstances of this case and the Kentucky Litigation do not rise to the level

of "abnormally excessive or deleterious," particularly where any "piecemeal

litigation that has occurred is arguably due to the competing forum selection

---

[8] To reiterate, this analysis assumes the existence of parallel proceedings.

clauses that the parties negotiated and included in their [a]greements with each other." Schrenkel v. LendUS, LLC, No. 2:18-CV-382-29, 2018 WL 4002112, at *6 (M.D. Fla. Aug. 22, 2018). This factor weighs against abstention.

### v.      Whether Federal Law Provides the Rule of Decision

Under the fifth factor, the Court must "determine whether federal law or state law provides the rule of decision." Jackson-Platts, 727 F.3d at 1143. This factor favors abstention only if "the applicable state law is particularly complex or best left for state courts to resolve." Id. Plaintiff's claims for breach of contract and fraud do not present particularly complex or difficult issues of state law. See, e.g., Noonan S., 841 F.2d at 382 (noting that "simple tort and breach of contract claims" were not "complex questions of state law that a state court might be best suited to resolve"). Consequently, this factor does not support abstention.

### vi.      Whether the State Court Will Adequately Protect the Parties' Rights

"The sixth and final factor concerns whether the state court can adequately protect the parties' rights." Jackson-Platts, 727 F.3d at 1143. Where both the state and federal forum are adequate to protect the parties' rights, this factor is neutral. Id. Defendants have not shown that this forum is inadequate to protect the parties' rights. As such, this factor neither weighs for or against abstention.

\* \* \*

As the Court's foregoing analysis shows, abstention under the Colorado River doctrine is not warranted in this case.  This action and the Kentucky Litigation are not so substantially similar that they qualify as parallel proceedings, which is a threshold requirement for abstention.  But even if these cases were substantially similar, the Colorado River factors do not support this Court's abstention from jurisdiction.  In other words, this case lacks the exceptional circumstances that are necessary for abstention.  Consequently, to the extent that Defendants ask the Court to dismiss this action on abstention grounds, the Motion to Dismiss is **DENIED**.

## IV.   ALTERNATIVE MOTION TO TRANSFER

Defendants argue that even if the Court declines to dismiss the action, the Court should instead transfer the case under 28 U.S.C. § 1404(a).  Defendants acknowledge the existence of the forum selection clause in the Share Purchase Agreement, which points to a Georgia forum.  However, Defendants assert that this Court should enforce the forum selection clause in the Employment Agreements instead and transfer this case to the Eastern District of Kentucky.  Plaintiff, on the other hand, contends that the Share Purchase Agreement's forum selection clause—which would not permit transfer—controls in this case.  The Court begins

with the question of which forum selection clause applies before turning to the §

1404(a) analysis.

### 1.     Forum Selection Clause

As this Court previously noted, see supra note 1, the Employment

Agreements and the Share Purchase Agreement contain different forum selection

clauses.  Defendants ask this Court to enforce the Employment Agreements' forum

selection clause rather than that in the Share Purchase Agreement.

Where the parties present different contracts, "each containing a forum

selection clause designating a different forum, and the parties do not dispute the

facts which gave rise to those two conflicting contracts, the court must decide as a

matter of law on the agreed facts which forum selection clause governs." Asoma

Corp. v. SK Shipping Co., 467 F.3d 817, 822 (2d Cir. 2006).  When determining

which forum selection clause to enforce, courts have "have examined the claims at

issue to determine which contract, and therefore which [forum selection] clause,

applies." Schrenkel v. LendUS, LLC, No. 2:18-CV-382-29, 2018 WL 5619358, at

*6 (M.D. Fla. Oct. 30, 2018).  This is a fact-dependent inquiry that varies by case.

See id.

Plaintiff brings claims for breach of contract and fraud, both of which are

premised on the Share Purchase Agreement.  Specifically, Plaintiff alleges in the

Amended Complaint that Defendants breached sections 2.13(a), 2.13(b), 2.23(a), 2.23(c), 2.23(f), 2.24(a) and 2.24(e) of the Share Purchase Agreement by committing Medicare and Medicaid fraud.  [Doc. 22, p. 10]; see also [Doc. 25-2, pp. 87, 92, 93] (relevant provisions of the Share Purchase Agreement).  Those provisions pertain to representations and warranties made by Defendants regarding their radiology practice and broadly concern the practice's compliance with applicable legal requirements, including those for Medicare and Medicaid.  "A claim 'relates to' a contract when 'the dispute occurs as a fairly direct result of the performance of contractual duties.'"  Bailey v. ERG Enters., LP, 705 F.3d 1311, 1317 (11th Cir. 2013).  Because Plaintiff's claims concern Defendants' obligations under the Share Purchase Agreement, the forum selection clause contained in that contract—which requires litigation in Georgia—applies.

Nonetheless, Defendants argue that Plaintiff's claims in this case are actually governed by the forum selection clause in the Employment Agreements because those claims "directly relate to allegations of [Defendants'] employment relationship."  [Doc. 25-1, p. 20].  More specifically, according to Defendants, "[f]ailure to pay Defendants under the Employment Agreement is a violation of the Share Purchase Agreement and vice versa."  Id.  But failure to pay Defendants is

22

the central allegation in the Kentucky Litigation, not in this case.  This argument is therefore unpersuasive.

Defendants also claim that the forum selection clause in the Share Purchase Agreement is not "controlling or exclusive" because the Share Purchase Agreement and the Employment Agreements reference one another.  Id. Defendants' own argument refutes this point:  "[B]oth agreements are of equal force."  Id.  Plaintiff's claims in this action arise under the Share Purchase Agreement, which contains a forum selection clause providing for litigation in Georgia.  The existence of a different forum selection clause in related, albeit separate, agreements does not change this fact.

While perhaps inconvenient, the parties' decision to execute agreements with inconsistent forum selection clauses does not allow Defendants to select which clause to enforce when Plaintiff's claims implicate only one agreement. Insofar as Defendants claim that this Court should enforce the Employment Agreements' forum selection clause, that argument fails.  The Court therefore concludes that the forum selection clause in the Share Purchase Agreement applies to this case.

2.     **Section 1404(a) Analysis**

Under § 1404(a), "a district court may transfer any civil action to any other

district or division where it might have been brought or to any district or division

to which all parties have consented" to serve "the convenience of parties and

witnesses" and "the interest of justice."  However, where parties have agreed to a

valid forum selection clause, a district court considering a § 1404(a) motion should

ordinarily enforce the forum selection clause unless the case presents

"extraordinary circumstances unrelated to the convenience of the parties."  Atl.

Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex., 571 U.S. 49, 62

(2013).  Importantly, forum selection clauses "are presumptively valid and

enforceable" absent "a 'strong showing' that enforcement would be unfair or

unreasonable under the circumstances."[9]  Krenkel v. Kerzner Int'l Hotels Ltd., 579

F.3d 1279, 1281 (11th Cir. 2009).  The Eleventh Circuit Court of Appeals has

noted that "an enforceable [forum selection] clause carries near-determinative

weight" in the § 1404(a) analysis.  GDG Acquisitions, LLC v. Gov't of Belize, 749

F.3d 1024, 1028 (11th Cir. 2014).

---

[9] Defendants do not argue that the forum selection clause in the Share Purchase
Agreement is invalid or unenforceable; they merely assert that this Court should opt to
enforce the forum selection clause in the Employment Agreements instead.  In fact, they
concede that it is of "equal force" to the forum selection clause in the Employment
Agreements and that it "can be read as mandatory."  [Doc. 25-1, pp. 20–22].

As the Court discussed above, the parties entered into an agreement with a forum selection clause that requires litigation in Georgia courts.  Defendants have not shown this Court that transferring this case is warranted when doing so would take the matter outside the forum to which the parties agreed.  Stated another way, Defendants have not established that this case presents the kind of extraordinary circumstances that allow this Court to disregard a valid and enforceable forum selection clause.

Although Defendants assert that the forum selection clause should "control less" than factors such as the convenience of the parties and witnesses, [Doc. 25-1, p. 22], the United States Supreme Court has established that "[a] court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests," Atl. Marine Constr., 571 U.S. at 64.  Because the parties contractually agreed to a given forum by virtue of the forum selection clause in the Share Purchase Agreement, this Court "must deem the private-interest factors to weigh entirely in favor of the preselected forum," which, here, is Georgia.  Atl. Marine Constr., 571 U.S. at 64.  Therefore, this Court accords no weight to Defendants' arguments that transferring this case to Kentucky would serve the convenience of parties and witnesses.

In sum, the "enforcement of valid [forum selection] clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." Id. at 63 (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)).  The parties in this case agreed that disputes arising under the Share Purchase Agreement would be litigated in Georgia.  See id. at 66 ("When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations.").  Defendants have not shown this Court that extraordinary circumstances exist in this case such that the forum selection clause may be ignored.  Accordingly, transfer under § 1404(a) is not warranted, and the Alternative Motion to Transfer is **DENIED**.

## V.     ALTERNATIVE MOTION TO STAY

Finally, Defendants ask this Court to stay this action pursuant to its inherent powers.  Defendants argue that the case should be stayed pending the outcome of the Kentucky Litigation, partly to avoid "the risk of conflicting judgments."  [Doc. 25-1, p. 23].

District courts have "broad discretion to stay proceedings as an incident to its power to control its own docket."  Clinton v. Jones, 520 U.S. 681, 706 (1997).  A stay may be justified "as a means of controlling the district court's docket and of

managing cases before the district court" or "by principles of abstention." <u>Ortega</u>

<u>Trujillo v. Conover & Co. Commc'ns</u>, 221 F.3d 1262, 1264 (11th Cir. 2000).  As

this Court has explained at length, this case and the Kentucky Litigation involve

distinct claims, obviating the risk of inconsistent judgments.  Because of this case's

age and slow progress, a stay would not benefit this Court's docket management.

Consequently, a stay is not warranted, and the Alternative Motion to Stay is

**DENIED**.

## VI.    CONCLUSION

For the reasons set forth above, the Motion for Leave to Amend [Doc. 38] is

**DENIED**.  The Motion to Dismiss Amended Complaint, Alternative Motion to

Transfer and Alternative Motion to Stay [Doc. 25] is **DENIED** in its entirety.

Defendants' Request for CR 16 Conference [Doc. 36] is **DENIED** as moot.

**SO ORDERED** this 9th day of June, 2023.

J. P. BOULEE
United States District Judge